# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KAREN A. SMITH
   **Plaintiff,**

 v.              Case No. 08-C-0674

**MICHAEL J. ASTRUE,**
**Commissioner of the Social Security Administration**
   **Defendant.**

## DECISION AND ORDER

On January 10, 2005, plaintiff Karen Smith filed an application for supplemental security income ("SSI") claiming disability beginning January 1, 2003 based on cervical cancer, side effects of radiation treatment and mental problems. The Social Security Administration ("SSA") denied the claim initially and on reconsideration, as did an Administrative Law Judge ("ALJ") following a hearing. After the Appeals Council denied her request for review, the ALJ's decision became the SSA's final determination on plaintiff's application. See Getch v. Astrue, 539 F.3d 473, 480 (7th Cir. 2008). Plaintiff, proceeding pro se, now seeks judicial review under 42 U.S.C. § 405(g).

### I.

Judicial review under § 405(g) is limited to determining whether the ALJ's decision is supported by "substantial evidence" and free of legal error. Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind could accept as adequate to support a conclusion. Ketelboeter v. Astrue, 550 F.3d 620, 624 (7th Cir. 2008); Berger v. Astrue, 516 F.3d 539, 544 (7th Cir. 2008). Under this deferential

standard, if conflicting evidence would allow reasonable people to differ as to whether the claimant is disabled, the ALJ's decision to deny the claim must be upheld. See, e.g., Schoenfeld v. Apfel, 237 F.3d 788, 793 (7th Cir. 2001); Lee v. Sullivan, 988 F.2d 789, 793-94 (7th Cir. 1993). The court may not re-weigh the evidence, resolve evidentiary conflicts or substitute its judgment for the ALJ's. Rice v. Barnhart, 384 F.3d 363, 369 (7th Cir. 2004).

**II.**

A claimant is considered "disabled" for purposes of SSI if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The SSA has set up a sequential five-step test for considering disability applications, under which the ALJ must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe, medically determinable physical or mental impairment, i.e one that significantly limits her physical or mental ability to do basic work activities, 20 C.F.R. § 416.921(a); (3) if so, whether the claimant suffers from some presumptively disabling impairment; (4) if not, whether the claimant possesses the residual functional capacity ("RFC") to perform her past work; and (5) if not, whether the claimant is able to perform any other work in the national economy. See 20 C.F.R. § 416.920(a)(4); Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004).

An affirmative answer at any step in this process leads either to the next step, or, at steps three and five, to a finding that the claimant is disabled. A negative answer at any point, other than step three, ends the inquiry and leads to a determination that the claimant is not disabled. The claimant carries the burden at steps one through four, but if she reaches step

2

five, the burden shifts to the SSA to establish that the claimant is capable of performing other work in the national economy. Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001). The SSA may carry this burden by either relying on the testimony of a vocational expert ("VE"), who evaluates the claimant's ability to work in light of her limitations, or through the use of the "Medical-Vocational Guidelines," (a.k.a. "the Grid"), a chart that classifies a person as disabled or not disabled based on her exertional ability, age, education and work experience. E.g., Masch v. Barnhart, 406 F. Supp. 2d 1038, 1041-42 (E.D. Wis. 2005).

In this case, the ALJ denied plaintiff's claim at step two, finding that while she suffered from the medically determinable impairments of radiation colitis, migraines and depression, none were severe. (Tr. at 15.) The ALJ first noted that plaintiff's cervical cancer had not recurred since she received treatment (including a hysterectomy) in 2003. (Tr. at 16; 529-32.) The ALJ accepted that plaintiff had subsequent problems with loose stools and intermittent diarrhea, and that a January 2006 colonoscopy revealed probable radiation colitis. (Tr. at 16; 517.) However, the ALJ noted that the medical records contained little other reference to this condition, and that plaintiff received no ongoing treatment and took nothing stronger than over-the-counter medications for her symptoms. (Tr. at 16; 607.) The ALJ further noted that plaintiff could have obtained medication through GAMP (General Assistance Medical Program), but her doctor had not prescribed any. (Tr. at 16; 616-19.)

Plaintiff testified that she suffered from migraine headaches that lasted all day, occurring every three or four months, but the ALJ noted that she also took no medication for this condition, and the record contained few medical reports mentioning it. (Tr. at 17; 604.) The ALJ concluded that even if he accepted plaintiff's allegations as true, one migraine headache every three or four months would not significantly affect her ability to work. Plaintiff also

3

claimed fatigue, but the ALJ found no discussion of this condition in the medical records.[1] (Tr. at 17.)

Finally, plaintiff alleged depression, stemming in part from anxiety over her physical condition. The ALJ noted that subsequent to her hysterectomy[2] plaintiff also experienced personal problems, including the break-up of her marriage and the incarceration of her daughter, which caused plaintiff to begin drinking excessively. (Tr. at 17.) However, plaintiff re-married in November 2005, stopped drinking and resumed fairly normal daily activities. (Tr. at 17; 608-10; see also Tr. at 578.) The ALJ acknowledged that two doctors opined that plaintiff could not work due to mental impairments (Tr. at 487-88; 562-66), but he rejected those reports based on the absence of any supporting progress notes (Tr. at 17). The ALJ further noted that while plaintiff's therapist opined that plaintiff could not work from May to September 2006 (Tr. at 524-25), the treatment notes recorded GAF scores of 55 or higher after July 2005, with plaintiff's mood described as stable and euthymic (Tr. at 17; 339; 340; 540-41; 543-44; 546-47; 551; 554-55; 558).[3] The ALJ further noted that the record contained no evidence of mental health treatment since December 5, 2006. (Tr. at 17; 578.) Based on this evidence, the ALJ found that plaintiff experienced only mild restriction of activities of daily

---

[1]On June 26, 2003, plaintiff did tell her doctor she was "having a lot of fatigue." (Tr. at 286.) However, I have located no additional notes discussing this issue or setting forth any restrictions on plaintiff's ability to work based thereon.

[2]In his decision, the ALJ stated that the hysterectomy was performed in January 200<u>4</u> (Tr. at 17), but the medical records from the surgery indicate January 200<u>3</u> (Tr. at 170-73).

[3]GAF stands for Global Assessment of Functioning. Set up on a 0-100 scale, scores of 51-60 denote "moderate" symptoms, and scores of 61-70 "mild" symptoms. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32-34 (4th ed. 2000). In June 2005, plaintiff's GAF was set at 50. (Tr. at 560.) By November 2006, it increased to 65 (Tr. at 540), indicative of mild symptoms.

living; mild difficulties in social functioning; mild difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation. (Tr. at 17.) He therefore found this impairment non-severe as well. See 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe[.]").

The ALJ concluded that even if he were to proceed with the sequential process and adopt the RFC assessed by the state agency consultants (light, low stress routine work with no exposure to heights or hazards),[4] he would still deny the claim based on the VE's testimony that a person like plaintiff (age forty-nine, with a high school education and no past relevant work experience) with such limitations could perform various identified jobs. (Tr. at 18; 620-21.) He therefore denied the application. (Tr. at 18.)

**III.**

In a letter in support of her request for judicial review, plaintiff argues that the ALJ erred in finding her condition non-severe. She first states that she has cancer, which does not go away. However, substantial evidence supports the ALJ's determination that plaintiff has not experienced a recurrence. (Tr. at 150; 185; 195; 196; 214; 284; 308-12; 402; 474-75; 529-32.) Plaintiff states that she is concerned that the cancer has or may spread to other parts of her body, but she cites no medical or other evidence in support of this assertion, and I have found

---

[4] On April 19, 2005, SSA psychological consultant James Paquette, Ph.D., examined plaintiff, finding her amiable, responsive and cooperative, with adequate attention and concentration, psychologically able to withstand routine work stress and adapt to changes, with a GAF of 61. (Tr. at 349-52.) Two other consultants completed a physical RFC form, opining that plaintiff could perform light work with avoidance of hazards such as machinery and heights. (Tr. at 354-61.) Two mental health consultants completed a mental RFC form, opining that plaintiff was not significantly or only moderately limited in all of the listed areas and could perform low stress, routine work. (Tr. at 362-64.)

5

none.[5]

Plaintiff next states that she continues to experience problems associated with her radiation treatment, including that she must run to the bathroom constantly. The ALJ considered this condition and reasonably concluded that it did not significantly limit plaintiff's ability to work. Substantial evidence also supports this determination. For example, a June 16, 2004 colonoscopy revealed only minimal radiation proctitis (Tr. at 248); on June 21, 2004, plaintiff's treating gynecologist suggested that she use Metamucil and Imodium for her diarrheal problems (Tr. at 283); on July 1, 2004 and March 15, 2005, plaintiff's internal medicine doctor recommended Imodium (Tr. at 399; 508); on September 19, 2005, her gynecologist again advised her to use Metamucil (Tr. at 429); and on February 21, 2006, during a neurology consult, plaintiff denied "any nausea, vomiting, diarrhea or constipation" (Tr. at 568). Plaintiff also underwent numerous scans related to these types of complaints, which generally came back normal. For example, a March 17, 2005, upper abdominal ultrasound was within normal limits (Tr. at 420); a July 28, 2005, esophageal endoscopy came back completely normal aside from some minimal superficial gastritis (Tr. at 412), and a biopsy of her small intestine taken the same date likewise revealed nothing significant (Tr. at 413); EEG's completed on August 30, 2005 and September 6, 2005 came back normal (Tr. at 406; 431); a January 19, 2006 endoscopy revealed a normal esophagus and stomach (Tr. at 519); and a December 5, 2007, abdominal ultrasound related to her complaints of abdominal pain and diarrhea was essentially unremarkable (Tr. at 502).

---

[5] At one point doctors did discover a mass in the left lobe of plaintiff's thyroid gland. (Tr. at 404.) However, the record contains no indication that the mass is malignant. (See Tr. at 498-99; 533-34.)

6

Plaintiff contends that she has not worked in years because basic work activities are difficult for her. Again, she cites no evidence in support of her assertion, and the record contains substantial evidence to the contrary.[6] Plaintiff proceeds pro se in this court, which obligates me to construe her papers liberally. Nevertheless, even pro se litigants must develop their arguments. See, e.g., Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001); Mathis v. New York Life Ins. Co., 133 F.3d 546, 548 (7th Cir. 1998); Provident Sav. Bank v. Popovich, 71 F.3d 696, 699-700 (7th Cir. 1995). Plaintiff has failed to do so.[7]

Finally, even if the ALJ erred in finding plaintiff's impairments non-severe at step two, the error is harmless given the ALJ's alternate finding – based on the SSA consultants' reports and the VE's testimony – that plaintiff could perform various jobs existing in significant numbers in the economy. See Keys v. Barnhart, 347 F.3d 990, 994 (7th Cir. 2003) (holding that the

---

[6] At one point during her interview with Dr. Paquette, plaintiff stated that "she is not able to 'hold a job and don't want to work anyway, I want to do my own thing work on crafts.'" (Tr. at 350.)

[7] I note that plaintiff was represented by counsel at the hearing before the ALJ. (Tr. at 599.) Thus, the ALJ was under no heightened duty to develop the record, see Thompson v. Sullivan, 933 F.2d 581, 585-86 (7th Cir. 1991), and was entitled to presume that plaintiff made her best case for benefits, Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988). In her complaint in this court, plaintiff states that the ALJ should not have heard "any cases that day due to the fact that his wife had just died." (Compl. at 3.) I see no mention of this in the record; in any event, the hearing transcript reveals that the ALJ acted appropriately, and the adverse decision issued over a month after the hearing. (Tr. at 10; 597.) Plaintiff also states in the complaint that she suffers from allergies and asthma, but she fails to cite any evidence of record demonstrating the severity of such conditions. Finally, plaintiff attaches to the complaint a letter from her doctor stating that she cannot maintain employment. Because this letter post-dates the ALJ's decision, I may not rely upon it to reverse his decision under sentence four, see Eads v. Sec. of Dep't of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993) (stating that the ALJ "cannot be faulted for having failed to weigh evidence never presented to him"), and because it offers little more than a bare conclusion that plaintiff is disabled, I see no basis for a sentence six remand to consider it, see Jens v. Barnhart, 347 F.3d 209, 214 (7th Cir. 2003) (stating that a sentence six remand is warranted only if there is a reasonable probability that the ALJ would have reached a different conclusion had the new evidence been considered).

7

harmless error doctrine applies in social security cases). Plaintiff raises no issue with this finding, and the record provides no clear basis for questioning it. It is true that, contrary to the opinions of the SSA consultants, two of plaintiff's doctors opined that plaintiff could not work during at least part of the relevant time, but the ALJ reasonably rejected both of those reports.

In a December 12, 2005 report, Dr. Burgarino opined that plaintiff could not work until June 12, 2006 due to mental problems. (Tr. at 487-88; 535-36.) However, this check-box report contains no explanation for such a conclusion, and as the ALJ noted, no obvious support appears in the treatment notes. To the contrary, even at the outset of mental health treatment in October 2004, plaintiff was noted to have no problems with memory, attention/concentration, impulse control, judgment or insight (Tr. at 582), and other evidence of record reveals that during the relevant time period plaintiff was generally found to be stable, amiable and responsive, with adequate concentration, logical thought processes, no delusional episodes, and generally good mood (e.g., Tr. at 340; 349; 540-41; 534-44). Plaintiff's symptoms were rated as "moderate" early in her treatment and soon improved, ending in the "mild" range on the GAF scale. (Tr. at 540; 560.)

The other report, a May 18, 2006 document prepared by Dr. Sethi, indicated that plaintiff frequently experienced pain or other symptoms sufficient to interfere with the attention and concentration needed to perform even simple work tasks, and that she was incapable of performing even low stress jobs. Dr. Sethi opined that plaintiff could stand/walk less than two hours in an eight hour day, sit about two hours in an eight hour day, and never squat or climb ladders. He further stated that she would be absent more than four days per month based on her problems. (Tr. at 562-66.) Despite these severe physical and mental restrictions, in the area of the report calling for clinical findings and objective signs the doctor wrote only "spasm

8

L-S spine." (Tr. at 562.) Further, as the ALJ noted, the record contains no treatment notes supporting these restrictions. I also note that the record contains other check-box forms completed by Dr. Sethi, which are contradictory. For example, an August 24, 2005 report endorses a physical ability for light work with some cognitive and mental health difficulties (Tr. at 576-77), while an October 20, 2005 report endorses a physical ability for less than sedentary work but with no cognitive or mental health restrictions (Tr. at 574-75).

Ultimately, it is the ALJ's job to weigh the medical opinions, see, e.g., Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000), and he may properly reject reports that are contradictory, unsupported by the record or offer only a bottom line conclusion, see 20 C.F.R. 416.927(e); Johansen v. Barnhart, 314 F.3d 283, 287-88 (7th Cir. 2002). I see no reversible error in the ALJ's evaluation in this case.[8]

**IV.**

As the ALJ noted near the end of the hearing, plaintiff had some serious medical problems in 2003 and 2004, prior to her filing of the instant application, but she got better in 2005 and thereafter. (Tr. at 616.) Because substantial evidence supports the ALJ's conclusion that plaintiff was not disabled at any relevant time, his decision must be affirmed. See 20 C.F.R. § 416.335.[9]

---

[8] Plaintiff's therapist also opined that plaintiff could not work for several months in 2006. (Tr. at 524-25.) Again, the treatment records do not appear to support this report, and like the report from Dr. Burgarino, this check-box form contains no explanation for the restrictions. Finally, the therapist does not appear to be an acceptable medical source under 20 C.F.R. § 404.1513(a).

[9] As the ALJ also noted at the hearing, plaintiff filed a previous SSI application, which was denied on January 6, 2005, just a few days before she filed the instant application on January 10, 2005. (Tr. at 616.)

9

**THEREFORE, IT IS ORDERED** that the ALJ's decision is **AFFIRMED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 14th day of March, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge